UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| STATE OF TEXAS<br>    *Plaintiff*,<br><br>v.<br><br>INTERNAL REVENUE SERVICE;<br>DEPARTMENT OF THE TREASURY,<br>DANIEL WERFEL, in his official capacity as Commissioner of Internal Revenue,<br>KEVIN WOOLFOLK, in his official capacity as Acting Associate Director of the IRS Office of Safeguards,<br>    *Defendants*. | CIVIL ACTION NO. 6:23-cv-00406 |

## STATE OF TEXAS'S ORIGINAL COMPLAINT

In an abrupt and dramatic announcement from the Internal Revenue Service, the Biden Administration is threatening to defund child support agencies nationwide. The Biden Administration's reckless decision to withhold billions of dollars in child support funding threatens the stability of millions of American families and puts America's children at risk. The Court should act swiftly to enjoin President Biden's IRS and protect the American families and children who he has callously put at the center of his administration's unlawful act.

## I. PARTIES

1. The State of Texas is a sovereign State of the United States of America.

2. The Department of the Treasury is a federal cabinet agency.

3. The Internal Revenue Service is a bureau of the Department of the Treasury and carries out the responsibilities of the Secretary of the Treasury under section 7801 of the Internal Revenue Code.

4. Daniel Werfel is the Commissioner of the Internal Revenue Service.

5. Kevin Woolfolk is the Acting Associate Director of the Internal Revenue Service Office of Safeguards.

## II. JURISDICTION & VENUE

6. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, and 2201(a). This action arises under 5 U.S.C. §§ 702–03 and 28 U.S.C. §§ 1331, 1346, and 1361.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e). Defendants are United States agencies and officers sued in their official capacities. The State of Texas is a resident of this judicial district and a substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within the Western District of Texas.

8. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 76 and 28 U.S.C. §§ 1361, 2201, and 2022, and its inherent equitable powers.

## III. BACKGROUND

9. The IRS has reversed course on over a decade of policy interpretation, suddenly requiring child support agencies to drastically restrict the information they can provide to contractors who are vital to the effective administration of child support programs and the

enforcement of child support orders. If agencies fail to comply, they risk losing hundreds of millions of dollars in federal support annually. Altogether, child support agencies nationwide risk losing billions of dollars in federal support.

10.  This sudden policy change, combined with the IRS's failure to solicit input and feedback, is arbitrary and capricious and violates the Administrative Procedure Act.

**A.  Legal Framework**

11.  The Social Security Act of 1975 contains Title IV-D—a federal law that, in part, requires every state to manage a child support enforcement program.

12.  The federal government provides money to each state to help fund Title IV-D programs. These federal dollars help cover the operational costs involved in child support enforcement, including establishing orders, enforcement efforts, and tracking and reporting.

13.  In Texas, the Child Support Division of the Office of the Attorney General (OAG Child Support) is the official "Title IV-D agency" in Texas. Tex. Fam. Code § 231.001. OAG Child Support helps families by establishing paternity, establishing child, medical, and dental support orders, collecting child support, and modifying child support obligations.

14.  The structure of each State's Title IV-D agency, and the services it provides, must conform to federal guidelines, including setting up an administrative framework governing the disbursement of collected funds and maintaining computer systems that meet numerous federal specifications to maintain detailed records of all pending cases. 42 U.S.C. § 654(3), (27).

15.  The Social Security Act requires states to submit a plan to the Secretary of Health and Human Services outlining the state's intent to "provide services relating to the establishment

of paternity or the establishment, modification, or enforcement of child support obligations" and to "enforce any support obligation . . . ." 42 U.S.C. §§ 602(a)(1)(A)(i), 654(4).

16. The State plan must maintain a full record of collections and disbursements while providing for a process of annual review and reporting to the Secretary "information necessary to determine compliance with federal standards." 42 U.S.C. § 654(10), (15). The State must also establish a "statewide automated date processing and information retrieval system," subject to approval by the Secretary, that "control[s], account[s] for, and monitor[s] all the factors in the support enforcement collection and paternity determination process under such plan." 42 U.S.C. §§ 652(d), 654(16).

17. To protect confidential information "handled by the State agency," the plan must demonstrate that the State has "safeguards" in effect "designed to protect the privacy rights of the parties." 42 U.S.C. § 654(26).

18. These safeguards must protect against "unauthorized use or disclosure of information" relating to proceedings or actions to "establish paternity or to establish, modify, or enforce support, or to make or enforce child custody determination." 42 U.S.C. § 654(26)(A). Other safeguards must be in place to prevent the disclosure of confidential information on the whereabouts of a party or the child to another person if a protective order has been entered or the disclosure may result in physical or emotional harm. 42 U.S.C. § 654(26)(B–C).

19. To oversee this intricate federal-state enterprise, Congress created the Office of Child Support Enforcement (OCSE) within the Department of Health and Human Services (HHS).

20. OCSE audits the States' compliance with their federally approved plans at least once every three years. 42 U.S.C. § 652(a)(4)(C). If a state does not "substantially comply" with the requirements of Title IV-D, the Secretary of HHS is authorized to penalize the state and cut off funds. 42 U.S.C. § 609(a)(8); 45 C.F.R. § 304.20(b).

21. Each state's Title IV-D program receives Federal Tax Information from OCSE, as authorized by the Internal Revenue Code, for the purposes of establishing and enforcing child support orders.

## B. The Federal Tax Refund Offset Program

22. The Department of the Treasury operates the Treasury Offset Program (TOP).

23. TOP offsets many types of federal payments to collect delinquent debt.

24. TOP matches people who owe delinquent child support with money that federal agencies are paying—for example, a tax refund. When authorized by law, TOP withholds (offsets) money to pay the delinquent debt.

25. In the context of child support payments, the federal tax refund offset program intercepts federal tax refunds of noncustodial parents who owe past-due support. This offset program involves all child support agencies and three federal agencies: OCSE, the Department of the Treasury's Bureau of the Fiscal Service, and the IRS.

26. Texas's OAG Child Support participates in the federal tax refund offset program; participation is mandatory.

27. Under Title IV-D, the federal tax refund offset program is a mandatory enforcement remedy and cannot be suspended. Title IV-D requires states to have procedures to

collect past due support from tax refunds as set forth in 42 U.S.C. § 654(18) and to "take all steps necessary to implement and utilize such procedures."

28. Corresponding regulations at 45 C.F.R. § 303.72(b) require that a "State IV-D agency *shall* submit a notification (or notifications) of liability for past-due support to the Office according to the timeframes and in the manner specified by the Office in instructions." (emphasis added).

29. Accordingly, Title IV-D and regulations require states to participate in the federal tax refund offset program as a condition of their state plan.

30. Child support agencies, including OAG Child Support, work through the OCSE to submit information about people who are behind in child support payments. This information is sent to the Department of the Treasury and includes their name, Social Security number, and past-due child support amounts.

31. If the child support debt meets the federal requirements for a federal tax refund offset, the noncustodial parent will receive a Pre-Offset Notice explaining why their case was submitted to the offset program. That notice shows the past-due support amount owed at the time of the notice. The Pre-Offset Notice includes information about federal tax refund offset, administration offset, and other actions the child support agency may take to enforce or collect a past-due amount.

32. Through OCSE, the offset payment is sent to the child support agency to pay toward the past-due support. At the time of the tax refund offset, the Department of the Treasury sends a Notice of Offset to the noncustodial parent stating that all of part of their federal tax refund has been intercepted.

33. The federal tax offset collections represent approximately 8% of total annual child support collections, or more than $5 billion in support.

34. In 2022, OAG Child Support received approximately $320 million in federal offset funds.

## C. IRS Disclosure Limitations and Policy of Non-Enforcement

35. Child support agencies receive Federal Tax Information (FTI) as part of their participation in the tax offset program.

36. FTI is any tax or tax return information received from the IRS or a "Secondary Source," defined by IRS Publication 1075. A "Secondary Source" includes OCSE and the Bureau of Fiscal Service. FTI does not include tax return information provided directly by a taxpayer.

37. IRS Publication 1075 gives detailed information about the policies, practices, controls, and safeguards required by agencies and contractors to maintain the confidentiality of FTI data.

38. Under the Internal Revenue Code, Title IV-D agencies may disclose limited FTI to contractors of the agency for the purpose of establishing and collecting child support obligations from and locating individuals owing such obligations. This limited FTI includes three pieces of information: (1) the taxpayer's address, (2) the taxpayer's social security number, and (3) the amount of the tax offset (i.e., the intercepted return).

39. This disclosure may only be used for child support purposes. 26 U.S.C. § 6103(l)(6)(C).

40. All Title IV-D agencies must comply with safeguarding procedures established by the IRS to protect FTI. 26 U.S.C. § 6103.

41. Agencies must submit Safeguards Security Reports to the IRS annually, identifying the processes, procedures, and security and privacy controls in place to protect FTI in compliance with IRC § 6103(p).

42. Safeguard Security Reports must fully report to the IRS all disclosures of FTI to contractors and subcontractors.

43. The IRS conducts safeguard reviews to evaluate the use of FTI and the measures employed by the agency and its agents to protect FTI data.

44. After the safeguard review, the IRS provides the agency with an overview of findings.

45. Following a review, the IRS provides the agency with a Safeguard Review Report (SSR) along with a Corrective Action Plan (CAP). The CAP is a report containing the findings, the recommended corrective actions, and targeted implementation dates for each weakness identified during the review. The agency must complete the CAP by providing an updated status to each unresolved finding, including the projected or actual date to close the finding.

46. Findings are categorized by impact level: limited, moderate, significant, or critical. Outstanding issues must be resolved and addressed in the next reporting cycle. The IRS Office of Safeguards identifies deadlines for resolution of the findings based on the risk associated with each finding.

47. Notwithstanding the limitations on re-disclosure of FTI to contractors, the IRS has historically not enforced these restrictions.

48. Since at least 2009, the IRS has made audit findings in 48 states, including Texas, related to "unauthorized" re-disclosure of FTI to contractors beyond the (1) address, (2) social

security number, and (3) amount of offset.

49. For the past 13 years, all of these findings and any requirement of agency corrective action have been held in abeyance as the IRS has recognized the need for contractor support.

**D. IRS's Enforcement Announcement**

50. On February 15, 2023, the IRS Office of Safeguards issued a Security and Privacy Memo to all Directors of Title IV-D child support programs abruptly reversing course on over a decade of policy interpretation. This memo is attached here as Exhibit 1 (Enforcement Announcement).

51. In the Enforcement Announcement, the IRS threatens to defund child support agencies who do not substantially limit the sharing of FTI to contractors who are necessary for the administration of child support programs and the enforcement of child support orders.

52. The Enforcement Announcement requires Title IV-D programs to cut off FTI re-disclosure to contractors. Child Support Enforcement Agencies, like OAG Child Support, who have had audit findings related to re-disclosure of FTI to contractors held in abeyance, will receive a Warning Letter on or around October 1, 2023. At that time, they will have 30 days to suspend data sharing with contractors or risk losing access to FTI, making it impossible for the agency to participate in the federal tax offset program. Because participation in the federal tax offset program is mandatory, this Enforcement Announcement threatens to put Texas in violation of its state plan.

53. In the Enforcement Announcement, the IRS acknowledges that since *at least* 2009, it has held findings in abeyance and never recommended remediation for any findings of "unauthorized disclosure" to contractors.

54. Notwithstanding the State's reliance on this longstanding policy of nonenforcement and the IRS's recognition of the need for contractor access to this information, the Enforcement Announcement wholly ignores the State's reliance interests. Instead, the Enforcement Announcement indicates simply that the IRS is under "pressure[] to ensure adherence to the redisclosure restrictions," which is "forc[ing] this change."

55. In Texas, OAG Child Support uses contractors to ensure the successful operation of the child support program. Contractor services are necessary for several critical aspects of Texas's Title IV-D program, including mainframe and cloud services, information technology security and modernization services, child support operational staff augmentation services, county domestic relations office support services, print mail services, and telecommunication, network, and telephony services. Critically, Texas relies on contractors with technical expertise to develop the necessary infrastructure to securely facilitate the flow of child support case information, including FTI data.

56. OAG Child Support has been operating under the IRS's longstanding policy of non-enforcement and the IRS's recognition of the need for contractors. This sudden shift in the agency's enforcement policy requires OAG Child Support to choose between undertaking an enormous restructuring process at an exorbitant cost to the State or risk losing hundreds of millions of dollars per year in federal tax offsets—and potentially losing access to *all* sources of federal funding.

## IV. CLAIM FOR RELIEF

## The Enforcement Announcement is Arbitrary and Capricious
## (5 U.S.C. § 706(2)(A))

57. "Federal administrative agencies are required to engage in reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.*

58. This requirement applies to both new policies created on a blank slate *and* to new policies related to previously enacted statutes. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

59. Although agencies are entitled to deference, "the arbitrary and capricious standard of review . . . is by no means a rubber stamp." *Texas v. United States*, 524 F. Supp. 3d 598, 653 (S.D. Tex. 2021) (quoting *United States v. Garner*, 767 F.2d 104, 116 (5th Cir. 1985)).

60. When an agency's new policy contradicts its previous position and the prior policy has engendered serious reliance interests, the agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *F.C.C.*, 556 U.S. at 515.

61. The IRS's Enforcement Announcement implementing a sudden change in enforcement policy is arbitrary and capricious for multiple reasons.

62. First, the IRS does not provide any reasoned basis for its sudden change of course.

63. While the IRS indicates it is under "pressure[] to ensure adherence to the redisclosure restrictions," the IRS provides no empirical or other information justifying its new policy.

64. Second, the IRS does not take into account the serious reliance interests engendered by the non-enforcement of this statute. In its Enforcement Announcement, the IRS acknowledges that it has not enforced this statute "since at least 2009." Yet, there is no discussion of the State's substantial reliance interests on the IRS's previous position.

65. The Enforcement Announcement does not consider any effects on the states. Defendants' failure to consider this factor is independently sufficient to set aside the Enforcement Announcement. *See, e.g.*, *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).

66. Even if Defendants had decided that other policy considerations outweighed the costs to the State, Defendants did not in fact make such a decision. Considering such policy concerns "was the agency's job, but the agency failed to do it." *Regents of the Univ. of Cal.*, 140 S. Ct. at 1914.

67. For this additional reason, the Enforcement Announcement does not "rest[] on a consideration of relevant factors." *Michigan*, 576 U.S. at 750 (internal quotation marks omitted). Because the Enforcement Announcement reflects no consideration of the States' interests in Defendants' longstanding policy of nonenforcement, it is arbitrary and capricious.

68. Further, there is no indication Defendants considered whether they could have achieved their goal of nondisclosure through less-burdensome or less-sweeping means. This too renders their resulting decision arbitrary and capricious.

69. The IRS's Enforcement Announcement does not offer any reason why it is requiring child support agencies to wholly restructure by October 2023. The Enforcement Announcement was issued without any consideration whatsoever of the time necessary to comply with this directive or of a more limited policy. *See Regents of the Univ. of Cal.*, 140 S. Ct. at 1912.

70.     For these reasons, the Enforcement Announcement is arbitrary and capricious and should be set aside.

## V. DECLARATORY JUDGMENT

The Declaratory Judgment Act authorizes federal courts to declare the rights of litigants. 28 U.S.C. § 2201. The issuance of a declaratory judgment can serve as the basis for an injunction to give effect to the declaratory judgment. *Steffel v. Thompson*, 452, 461 n.11 (1974).

## VI. CONCLUSION

For the reasons described above, the State of Texas is entitled to a declaration that Defendants are violating the law and the Enforcement Announcement is unlawful, unconstitutional, and unenforceable.

## VII. REQUEST FOR RELIEF

The State of Texas respectfully requests that the Court:

a. Hold unlawful and set aside the Enforcement Announcement;

b. Declare Defendants' actions unlawful;

c. Issue a preliminary and permanent injunction prohibiting Defendants from implementing the Enforcement Announcement;

d. Award the State of Texas costs and reasonable attorneys' fees;

e. Award such other relief as the Court deems equitable just.

Dated May 25, 2023.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

Respectfully submitted.

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Assistant Attorney General
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**